UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
LEVAR RILEY, & All Others Similarly Situated,        Civil Action No.
                Plaintiff(s),

                                              **JURY TRIAL DEMANDED**

     -against-

THE CITY OF NEW YORK; IN HIS OFFICAL        **CLASS ACTION COMPLAINT**
CAPACITY AS THEN NEW YORK CITY
POLICE OFFICER: JERRY BOWENS,
                Defendants.
----------------------------------------------------------X

     Plaintiff, LEVAR RILEY on behalf of all others similarly situated, by and through his  attorney

RUDY VELEZ. Esq. respectfully shows to this court and alleges as follows:

1. Plaintiff, **LEVAR RILEY**, brings this class action on behalf of all others similarly situated seeking

   compensatory damages against the **CITY of NEW YORK (CITY)** the defendant named herein, and

   alleges based upon the personal knowledge of Plaintiff, the investigation of counsel, and information

   and belief.

2. Pursuant to Rule 23 of the Federal Rules of Civil Procedure **LEVAR RILEY (RILEY)**, through

   his undersigned counsel, respectfully moves for class certification on the facts set forth in the

   following complaint and attached **EXHIBITS**.

**PRELIMINARY STATEMENT**

3. Specifically, defendant **CITY** knew or should have known that defendant, the aforementioned

   disgraced police veteran in the narcotics division in Brooklyn, with hundreds of arrests to his credit,

   through his key participation, sent numerous people to prison by denying them Due Process of Law.

   **JERRY BOWENS (BOWENS)** engaged in a pattern and practice of illegal and unconstitutional

   conduct, fabricating evidence, denial of Due Process of Law, perjury in circumventing Fourth

   Amendment restrictions, and arrests without probable cause.

The convictions against those people, similarly situated, and **RILEY**, that this officer claimed either possessed or sold drugs were thrown out. The disgraced officer's pattern and practice of violating people's civil rights were repeated some 134 times, see **EXHIBIT A**: Brooklyn Press Release September 7, 2022 KCDAO. Those identified as similarly situated plaintiffs in this action represent only a fraction of lawsuits against this officer for lack of awareness that their cases were vacated and dismissed. In each of these cases, this disgraced officer compounded his misconduct by repeating his lies over and over again.

4. In a statement by the Brooklyn District Attorney's Office, the District Attorney vowed to continue to bring the full weight of the law against uniformed police officers who lie and undermine the public trust in law enforcement which we rely on to keep New York safe, see **EXHIBIT B**: New York News, September 7, 2022

5. In a statement by the Brooklyn District Attorney's Office, the District Attorney vowed to continue to bring the full weight of the law against uniformed police officers who lie and undermine the public trust in law enforcement which we rely on to keep New York safe, see **EXHIBIT B**: New York News, September 7, 2022

## JURISDICTION AND VENUE

6. This action is brought forth pursuant to 42 U.S.C 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the laws of the State of New York.

7. Jurisdiction is founded upon 28 U.S.C § 1331, 1343 (1-4) and 2202.

8. Venue is proper in this district pursuant to 28 U.S.C § 1391 (b).

## JURY DEMAND

Plaintiff and all those similarly situated demand trial by jury.

## **PARTIES**

**9.** Plaintiff, **LEVAR RILEY (RILEY**), is an American Citizen residing in Brooklyn, New York. On

behalf of all others similarly situated, plaintiff brings this action against defendants seeking money

damages and further relief that may be just and proper.

Defendant, **CITY** OF NEW YORK (**CITY**), is a municipal corporation organized under the laws of

the State of New York and the public employer of the ex-police officer named as a defendant in this

action. The NEW YORK **CITY** POLICE DEPARTMENT (NYPD) is an agency of the **CITY** of

New York.

**10.**    The NEW YORK CITY POLICE DEPARTMENT (NYPD) is an agency of the **CITY** of New

York, existing and operating by virtue of the laws of the state of New York and the **CITY** of New

York.

**11.**    At all times relevant herein, **BOWENS** was acting under color of state law.

**12.**    At all times relevant herein, the aforementioned disgraced Police Officer, was acting as agent,

servant and employee of defendant **CITY** and in furtherance of the scope of his employment; to wit

under color of statues, ordinances, regulations, policies, customs and usages of the **CITY** and/or the

Police Department. He was convicted of police misconduct.

**13.**    **JERRY BOWENS** pleaded guilty to murder and falsifying police records while assigned to

Brooklyn South Narcotics Division. In 2007, he supplied and stole drugs from an informant, See

**EXHIBIT C**.  While his criminal case was pending, in 2009, he shot and killed his girlfriend and shot

her friend who survived. As if that was not enough, he put his own attorney on a hit list. See

**EXHIBIT D**.  In addition to all these crimes Bowens engaged in, 46 Civilian Complaints were filed

against Bowens. Not one of them was substantiated. See EXIBIT E, list of CCRB complaints. The

NYPD turned a blind eye to the misconduct Bowens was involved in. The **CITY** was on notice of **BOWEN'S** widespread practice and pattern of violating the civil rights of the people he arrested, yet did nothing about it.

14.    At all times relevant herein, EX-DEFENDANT POLICE OFFICER **BOWENS** was a one-man pattern and practice of police misconduct to which the **CITY** turned a blind eye.

<u>**FACTUAL ALLEGATIONS OF LEVAR RILEY AS REPRESENTATIVE OF THE**</u>
<u>**PROPOSED CLASS**</u>

15.    On September 28 ,2001, at approximately10:3 0 P.M., plaintiff was in the vicinity of 2920 West 21 Street, Brooklyn, New York with a few friends. **BOWENS** claimed he observed RILEY **sell a controlled substance, to wit: crack-cocaine. RILEY** was arrested and taken to Brooklyn Central Booking. These charges were entirely fabricated against **RILEY.** Plaintiff did not sell or possess narcotics. In his own Criminal Court Complaint, Police Officer **BOWENS** claimed he observed **RILEY** sell to 5 individuals, then to one Latisha Lopez. Bowens also claims he recovered a handgun in RILEY'S waistband. In reality, the gun was recovered on the floor of the entrance building **RILEY** was in front of. This sworn statement was fabricated because **BOWENS never made such an observation.**

16.    As a result of the false information presented to the grand jury, **RILEY** was indicted in 2001 on the aforementioned charges. As it turned out the sale and possession charge were dismissed by the Court on January 10,2002. With knowledge that his arrest and indictment were based on false evidence, and in fear of a significant period of incarceration of up to 7 years, **RILEY** plead guilty to a reduced misdemeanor charge for possession of the handgun. **RILEY** was given a plea deal of one year, a determinate jail sentence. Sometime around 2008, **BOWENS** was indicted for falsifying police records and filing false documents. News articles detailing other police officers, many of

whom worked with **BOWENS** revealed that these officers were convicted for planting drugs on innocent people, and that NYPD officers made false arrests to meet quotas and rake in overtime, which was commonplace within the department. In fact, a former NYPD narcotics officer who worked in the same unit as that it was common practice to fabricate drug charges against innocent people to make arrest quotas. See **EXHIBIT F**. State Supreme Court JUDGE GUSTIN L. REICHBACH found one such officer guilty of planting drugs and falsifying business records. Before announcing the verdict, Justice REICHBACH scolded the police department for what he called a widespread culture of corruption endemic in its drug units. See **EXHIBIT G**. Similarly, Federal Judge Weinstein who presided over a police corruption trial commented on the prevalence of planting evidence by the police and stated that the NYPD was plagued by widespread falsification by arresting officers (J. Weinstein). Indeed, the pressure put on the NYPD OFFICERS to meet the arrest quotas was so widespread, that in August 2010, then-gov. Patterson signed legislation expanding protections for police officers under the state's anti-quota statue to ban retaliation against officers for not meeting quotas for tickets, summonses, arrests, and stop-and-frisk encounters. Despite the 2010 legislation, a 2016 news article revealed allegations by NYPD OFFICERS that the NYPD was continuing to pursue illegal quotas and punishing officers who do not meet numerical goals. Subsequent reports revealed that these arrest quotas targeted many afflicted with drug habits-specifically, members of the Black and Hispanic Communities, such as **RILEY** and the proposed class members. While **BOWENS** was awaiting trial on the false report's indictment, he murdered his girlfriend and shot her friend (who survived). **BOWENS** received 40 years for his crimes. See **EXHIBIT H**, **BOWENS** sentencing minutes.   On November 4,2022, the Supreme Court of the State of New York, Kings County, vacated RILEY'S conviction and his indictment dismissed with the consent of the Brooklyn District Attorney's Office. See **EXHIBIT I**: RILEY Writ of Error Coram Nobis. Other convictions

from cases in which **these ex-police officers** played a key role were also vacated and dismissed in 2022. See **EXHIBIT J**: *Local News, District Attorney Dismissing More Drug Cases Tied To Unreliable Cops.*

17.    According to various newspaper and media accounts, some 378 criminal convictions tied to the testimony of former N.Y.P.D officers accused of lying and framing innocent people, have been thrown out. See **EXHIBIT A**: INFRA: Press Release, September 7th, 2023. By KCDAO **The Brooklyn District Attorney's office began an exhaustive review of cases hinging on these officers' testimony and sworn statements and discovered that these officers committed well over 300 acts of police misconduct, ranging from providing** false statements to perjury, when they worked as undercover police officers in the Brooklyn from 2005-2015. From this group of 300 cases the Brooklyn District Attorney overturned and vacated 134 cases attributed to **BOWENS'** key involvement.

18.    The impact of the writ of error coram nobis on the federal civil rights lawsuits is devastating. Although the writs upon which each of the 378 convictions were vacated specifically state the District Attorney has not identified any information or evidence indicative of innocence and that probable cause existed for plaintiffs' arrest, neither innocence or probable cause are a defense to a claim for a Due Process Violation, such as is claimed here, Count no. (3). A writ of error coram nobis in the absence of a violation of a constitutional right, cannot lie, see People v. Grimes, 2018 NY Slip Op 07038 Decided on October 23, 2018, Court of Appeals, Difiore, J. The Brooklyn District Attorney's office vacated hundreds of convictions because the convictions depended on the word of **these ex-police officers** who were now charged and indicted. **RILEY'S** prosecution was one such case of malicious lies, perjury, and fabricated evidence, and a Violation of Due Process. See **EXHIBIT I**, INFRA: RILEY *WRIT OF ERROR CORAM NOBIS.*

**19.**     The acts of complained of herein, and the vacatur of 378 convictions are a direct and proximate result of the **CITY** and the N.Y.P.D. systemic widespread and pervasive custom and practice of police misconduct, which although not an official policy, took on the force of law. The **CITY** was well aware of these practices and cannot claim it was not on notice of these practices. The sheer number of vacated cases is testament to this notice. Even in 2011, at least three dozen cops were under investigation for allegedly committing perjury in various criminal cases including drug busts and even a murder. See **EXHIBIT K**, DNAinfo.com August17,2011.

**20.**     The **CITY** and the N.Y.P.D turned a blind eye to these unlawful practices and its willful blindness is well documented, as in the suit of the Colon Brothers, 09-cv-0008 (JBW).

**21.**     The official policies, practices and customs of the **CITY** and the N.Y.P.D alleged herein violated plaintiff's and the similarly situated putative class members described herein Due Process Rights pursuant to the Constitution of the United States.

**22.**     The plaintiff also moves to be appointed representative of the Class, and for the appointment of the Law Office of Rudy Velez & Associates to serve as counsel pursuant to Fed. R. Civ. P 23(g).

**23.**     Plaintiff brings this class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) on behalf of the Class defined as people arrested by **BOWENS**, from 2005-2015 whose convictions have been vacated and dismissed due to his participation as detailed herein. See **EXHIBIT L**: *Partial on List of Those Similarly Situated Exonerated Proposed Class Members. Who Were Identified by The Conviction Integrity Bureau of The Brooklyn District Attorneys' Office*. All these convictions were overturned because of **BOWENS'** key role in initiating their prosecutions. In addition, there was no other independent witness or evidence to prosecute these individuals.

## **CLASS ACTION ALLEGATIONS**

**24.** A further description of those people arrested due to the aforementioned ex-police officers key participation is as follows: All persons whose judgement of conviction were vacated by the order of the Brooklyn Supreme Court in 2022, upon the People's motion and defense attorney's motion. The Supreme Court, Kings County, Criminal Division of the **CITY** of New York vacated and dismissed these convictions after a thorough investigation of these convicted and disgraced ex-police officers.

**25.** The forgoing Class consists of 134 persons: the named Plaintiff, four other persons, who have already settled (see HARRIS v. CITY of New York. No 24-CV-5063(JGLC),(S.D.N.Y.); Ashby v. **CITY** of New York, No. 24-CV-5326(AKH, (S.D.N.Y). Satterthwaite v. **CITY** of New York 24-CV-4939, and Doneal Barnes v. the **CITY** of New York), the list of names in **EXHIBIT L** INFRA, *and the rest of defendants whose names are known to the KCDAO.*

**26.** Under Federal Rule of Civil Procedure 23 ("Rule 23'), a plaintiff may bring a civil action on behalf of a class "only If: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defense of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class" Fed. R. Civ. P. 23 (a) (1)-(4).

**27.** In addition, under Rule 23(b) (3), which governs the proposed class action here, the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjusting the controversy." Fed. R. Civ. P.23 (b) (a)

In addition to the requirements of numerosity, commonality, typicality, adequate representation,

predominance, and superiority set forth in Rule 23, the Second Circuit has recognized an "implied

requirement of ascertainably". "To be ascertainable, the class must be "readily identifiable, such

that the court can determine who is in the class and, thus, bound by the ruling.

**28.** If the Rule 23(a) criteria are satisfied, the proposed class must also satisfy at least one of the

categories provided in Rule 23(b) to be certified as a class action. The district court is often in the best

position to assess the propriety of the class action. Class actions thus give voice to those similarly

situated who would have no realistic day in Court if a class action were not available. Only a fraction

of the total convictions vacated are actually notified and receive notice of the dismissals. Those who

never receive notice have the right to sue because they neither knew nor should have known that their

convictions were overturned.

### A. The Proposed Class Satisfies Rule 23(a)

### 1. Numerosity – Rule 23(a)(1)

**29**. This case satisfies the essential element of any class action: the proposed class be so large that

joinder of all individual class members is impracticable. See Fed. R. Civ. P. 23(a)(1). Where, as here

the cases involve a class numbering approximately134 cases the numerosity requirement of Rule 23

(a)(1) is easily met. Indeed, numerosity can be presumed when a class contains as few as 40

members. In this case, the proposed plaintiff class consists of hundreds of people. Any argument that

the proposed class does not satisfy the numerosity requirement would be frivolous.

**30**. The members of the Class are so numerous as to render joinder impracticable. Joinder is also

impracticable because many Class members are not aware of the fact that their constitutional rights have

been violated and that they have the right to seek judicial redress. Many Class members lack sufficient

means to retain an attorney to prosecute a civil rights lawsuit. Moreover, as victims of unconstitutional policing and prosecution, many class members do not bring individual claims for fear of retaliation and reprisal by N.Y.P.D officers. Without this class action, the individuals described herein will lose their right to bring claims against the CITY.

### 2. Commonality – Rule 23(a)(2)

**31.** Rule 23(a)(2) requires only that a "single common question" unite the proposed class. Rule 23(a)(2) "does not require all questions of law or fact be common to the class."

**32.** Here, common issues abound. Plaintiff's claims "must depend upon a common contention of such a nature that it is capable of class wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

**33.** The proposed class satisfies the commonality requirement because there are both legal and factual questions common to all members of the proposed class. Common questions include generally:

- Whether **BOWENS** violated the proposed Class members Due Process Rights;

- Whether **BOWENS** committed perjury and reported false statements in the prosecution that led to these convictions;

- Whether the convictions were vacated and dismissed because the proposed Class members were denied Due Process of Law, violative of the New York State and United States Constitutions.

**34**. In short, all class members, and Plaintiff, allege that they were victims of a pattern and practice of police misconduct, which took on the force of law and emboldened the N.Y.P.D, to stop, seize and maliciously prosecute, and violate the Due Process Rights of vulnerable New Yorkers in marginalized communities in order to cover up police misconduct and bolster arrest statistics. All Class members, including the named Plaintiff, allege that they were deprived of Due Process as attested to in the Writ of Error Coram Nobis of the Brooklyn Supreme Court. Criminal term, see

**EXHIBIT M**: *Brooklyn Writs that simultaneously vacated their convictions (Partial Sampling of Writs).*

35. Given that all claims in this case emanate from the single mass exoneration pioneered under the current District Attorney of Brooklyn County, the common issues of law and fact predominate over any individual issues.

### 3. Typicality – Rule 23(a)(3)

36. The claims of the class representatives here are as Rule 23 (a)(3) requires, "typical of those of the absent class members. The proposed class representatives claims and defenses are typical because they arise from the same general "course of events" as those of the absent class members and rely on "similar legal arguments to prove defendant's liability. Because the circumstances surrounding the arrests of each of the putative class members are unique is not fatal to meeting the typicality requirement. **RILEY**, and the proposed class members all assert that each class member's claim arises from the same course of events and each class member makes a similar legal argument to prove the defendant's liability.

37. The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims are the same essential characteristics as the claims of the class at large."

38. Typicality is determined by the nature of the claims of the class representative, not by the specifics facts from which they arose.

39. Representative claims are typical whereas, here, their injuries and those of the absent class members arise from malicious prosecutions by the same disgraced officers. Like all other class members, the named Plaintiff was compelled to live under the weight of a tainted criminal conviction, along with all the collateral consequences attendant to such a judgement, for many years before **BOWENS** misconduct came to light and afforded plaintiff some measure of relief from the tainted criminal

judgement.

40. The violations suffered by plaintiff are typical of those of the class he seeks to represent. Plaintiff's claims arise from the same course of unconstitutional conduct that gives rise to the claims of all the proposed class members, and are based upon the same legal theories as those of the putative class. Here, plaintiffs' claim among other things, that these ex-police officer's material participation in their arrest violated their Fourteenth Amendment Due Process Rights, violative of the United States Constitution. All of the proposed class members had their Due Process Rights violated in a similar fashion by **BOWENS.** Thus, by advancing his own interests, **RILEY** will advance the interests of the class.

41. Moreover, the typicality requirement can be satisfied despite actual differences among the claims because the named Plaintiff allege that these ex-officers engaged in the same unlawful conduct toward the proposed class. The typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.

42. Typicality is found where the "same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented.

43. In the case at bar, the ex-officers' misconduct, false statements and perjury violated plaintiff's Due Process Rights under the 14th Amendment as well as the proposed class.

### Adequacy of representation – Rule 23(a)(4)

44. Plaintiff satisfies Rule 23(a)(4)'s requirement that class representatives "fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4)." [A]dequacy of representation entails inquiry as whether: 1) plaintiff[s'] interests are antagonistic to the interest[s] of other members of the class and 2) plaintiff[s] attorney is qualified, experienced and able to conduct the litigation. "Both requirements are

met here. The proposed class representative has no conflict with any class members and will fairly and adequately protect the interests of the classes. Plaintiff is an adequate representative because he was subjected to the same unlawful conduct as the class members and suffered the same injuries that the action seeks to remedy.

**45.** Counsel is competent and experienced in federal civil rights litigation and has been retained by **RILEY** and others to represent the plaintiff class. Additionally, the Law Office of Rudy Velez & Associates is currently in the process of settling a class action in the S.D.N.Y, *see* <u>Feliciano v The CITY of New York et al.</u>, 24-cv-7212-ALC. Counsel for the plaintiff has the resources, expertise and experience to prosecute this action. Counsel has also dedicated significant time to investigating the claims of plaintiff and the proposed class.

**46.** The Law Office of Rudy Velez and Associates has settled close to fifty (50) 42 U.S.C § 1983 civil rights lawsuits against the **CITY** of New York. The following are a sample of some of those settled lawsuits (all federal):

- *Donald McConney v. CITY of New York: 98-cv-4248: settled for $1,350,000.00*

- *Santiago v. CITY of New York: 99-cv-570: settled for $1,500,000.00*

- *Edwards v. CITY of New York: 00cv5958: settled for $1,500,000.00*

- *Washington v. CITY of New York: 06-cv-3105: settled for $1,200,00.00*

- *Mobley v. CITY of New York: 09-cv-7757: settled for $650,000.00*

- *Barnes v. CITY of New York: 23-cv-1070 (E.D.N.Y.): settled for $682,000.00*

- *Harris v. CITY of New York: 24-cv-3974: settled for $100,000.00*

- *Torres v. CITY of New York: 24-cv-5326 (S.D.N.Y.): settled for $75,000.00*

- *Restituyo v. CITY of New York: 24-cv-4939 (S.D.N.Y.): settlement in progress*

- *Satterthwaite v. CITY of New York: 24-cv-4939 (E.D.N.Y.): settled for*

*$200,000.00*

- *Guzman v. CITY of New York (E.D.N.Y.): settled for $425,000.00*

- *Tello v. CITY of New York: 24-cv-744): settled for $150,000.00*

- *Hernandez v. CITY of New York: 99-cv-5706: settled for $675,000.00*

- *Feliciano v. CITY of New York: 24-cv-7212: this is a CLASS ACTION in the settlement stages in the S.D.N.Y. with ex-police officer JOSEPH FRANCO and identical issues regarding civil rights violations.*

**47**. Accordingly, both elements of Rule 23(a)(4) are satisfied.

**48.** The Second Circuit has established a fifth prerequisite to class certification, "the implied ACERTAINABILITY requirement," which demands that a class be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." "A class is ascertainable when defined by objective criteria...and when identifying its members would not require a mini-hearing on the merits of each case." The court must be able to determine who is the class "without having to answer numerous individualized fact-intensive questions."

**49.** All class members, including the named plaintiff, allege that they were deprived of due process by a Writ of Eror Coram Nobis of the Brooklyn Supreme Court that simultaneously vacated their convictions. Given that all claims in this case emanate from the single mass exoneration pioneered under the District Attorney of Brooklyn County, the commission issues of law and fact predominate over any individual issues.

**50.** The mass exoneration reference herein produces approximately 378 overturned convictions. Then aforementioned ex-police officers played a key role in the arrest and prosecution of **RILEY** as well as the proposed class members, who were arrested, charged and ultimately convicted for various

rimes as a result of these ex-police officer's participation in supporting the convictions.

51. The actual number of exonerated cases associated with BOWENS is as high as134. See **EXHIBIT L**: INFRA.

Because of these ex-police officer's essential role in these prosecutions, the integrity of each prosecution was irrevocably impaired, and, as a result, the convictions were obtained in violation of RILEY and each proposed class members. Constitutional Right to Due Process under the 14th Amendment to the United States Constitution and the New York Constitution Article I, Section 6. Prosecutions that relied on false sworn statements cannot stand even in cases where a defendant has entered a plea of guilty. The district attorney was duty bound to dismissed these identified cases.

52. The Brooklyn District Attorney's Office has generated a list of those similarly situated class members who have already been ASCERTAINED by the conviction Integrity Bureau of the Brooklyn District Attorney's Office in an extensive investigation into police corruption and misconduct by these ex-police officers, see **EXHIBIT L**, *infra, Partial List of Those Similarly Situate Proposed Class Members Including the Representative plaintiff* **LEVAR RILEY**.

**Rule 23(b) Requirements**

53. In addition to 134 proposed class members (see **EXHIBIT L**, infra,), another 244 convictions were vacated in 2022. See **EXHIBIT N**: *The Total Number of Conviction Reliant on* these ex-police officers *that Have Been Dismissed After Review by The Brooklyn District Attorneys' Conviction Integrity Bureau Rose to Three Hundred seventy-eight (378) ASCERTAINED Convictions.* After satisfying the Rule 23(a) perquisites, the proposed class must qualify under one of the three categories set forth in Rule 23(b). plaintiff seeks certification under Rule 23(b)(3), which allows for class certification if common questions "predominate over any questions affecting only

individual members" and if class resolution is superior to other available methods for fairly and

efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

54. For the additional reasons discussed below, plaintiff submits that common issues predominate

and that the class action is the superior method for adjudicating the claims presented here.

## A. Predominance

55. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive

to warrant adjudication by representation.

56. The predominance inquiry is a core feature of the Rule 23(b)(3) class mechanism.

57. Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each

class members case as a genuine controversy can be achieved through generalized proof, and if these

particular issues are more substantial than the issues subject to only individualized proof."

58. While "Rule 23(b)(3) requires that common questions predominate, "however, it does not require"

that the action include only common questions".

59. Plaintiff can show that all class members' damages are susceptible to calculation based on a class-

wide formula, using Defendants' records. Plaintiffs seek to be made whole for their injuries that

followed from loss of liberty as a result of a denial of Due Process.

60. The common issues that predominate in this claim for class certification is the inherent value of a

day of lost liberty due either to incarceration or the restrictions of liberty posed by post release

suspension, forced court appearances, in the patient programs and supervised probation.

61. Relevant records can be reviewed and considered when calculating the number of days of loss of

liberty.

**62.** Damages calculation based on a class-wide formula can be demonstrated by a recent settlement of a similar type lawsuit, *Doneal Barnes v. **CITY** of New York.* 23-CV-1070-CLP (E.D.N.Y.).

**63.** In **BARNES**, plaintiff's conviction was overturned in Brooklyn Supreme Court by way of a coram Nobis and was part of a mass exoneration of convictions attributed to thirteen (13) convicted ex-police officers who played a key role in the prosecution of Doneal Barnes and hundreds of others in the confines of the Eastern District of New York. When it came time to determine the monetary value of Barnes damages for loss of liberty, See **EXHIBIT O**: *CITY Calculation or scale for loss of liberty, Barnes' Lawsuit.*

**64.** The questions at issue here predominates this case because defendants will likely be liable to all parties or to none.

**65.** Class issues predominate over individual issues because "if plaintiffs succeed in proving the alleged denial of Due Process, then each of the class plaintiffs will likely prevail" on his or her claims.

**66.** Furthermore, some factual variation in the circumstances of the class members does not defer the predominance requirement.
When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3), even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

### B. Superiority

**67.** To proceed under Rule 23 (b)(3), common questions must not only predominate, but a class action must also be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**68.** Given the sheer number of class members and the presumed demographics of the class-which consists of individuals who were part of mass exonerations-a class action is not just superior to other methods of adjudicating, but the other method of adjudication. Absent class certification it is virtually certain, that the rights of individual class members will go unvindicated.

**69.** Superiority is satisfied where class members economic disadvantage renders it improbable that large numbers of class members are capable of litigating individually. In considering Rule 23(b)(3) superiority, it is appropriate for the court to consider the inability of the poor or uninformed to enforce their rights and the improbability that large numbers of class members would possess the initiative to litigate individually.

**70.** Class certification will permit the resolution of thousands of individual claims in a single forum, at one time, thereby avoiding either a multiplicity of repetitive lawsuits, or worse yet, and more likely, no lawsuits at all, when plaintiffs are "aggrieved by the same civil right violation the case "presents precisely the type of situation for which the class action device it suited," since many nearly identical litigations can be adjudicated unison.

**71.** Class actions give voice to those similarly situated plaintiffs who would have no realistic day in Court if a class action were not available.

**72.** Accordingly, it is possible that class members would be less likely to pursue their claims individually, considering that the Class is estimated to be 134 plaintiffs alleging that they were harmed by the **BOWENS** key participation in their convictions, a class action is superior to other methods of adjudicating these claims.

**73.** The class should be certified pursuant to Federal Rule Procedure 23(a) and (b)(1) (b), (2) and (3) because all of the require requirements are satisfied, and because a class action is the clearly superior method of adjudicating the common claims against Defendants in the forum where the harm was

inflicted-the Eastern District of New York.

## CAUSES OF ACTION

## COUNT ONE

## AGAINST DEFENDANTS FOR VIOLATIONS OF U.S.C § 1981, 1983 FOURTH AND

## FOURTEENTH AMENDMENTS

## MALICIOUS PROSECUTION ON BEHALF OF THE PROPOSED CLASS SIMILARLY

## SITUATED AND RILEY

**74**. The plaintiff incorporates by reference the preceding allegations as though fully set fourth herein.

**75**. On or about 2005 through 2015, including September 28, 2001, the defendants initiated criminal proceedings against the plaintiff and all other similarly situated by misrepresenting and falsifying evidence in criminal court. **BOWENS** continued his lies by allowing the false information he provided either by himself or to his back-up police officers to be written on Felony Complaints and or told in the grand jury in order to secure indictments. Thus, **BOWENS** misrepresented and falsified evidence that created a falsehood in signing the felony complaints and **BOWENS** lies were material for a finding of probable cause. In commencing and continuing the prosecution of plaintiff, and all those similarly situated, defendants caused plaintiff, and those similarly situated, to be falsely charged with acts in violation of the Penal law of State of New York.

**76.** In the prosecution of **RILEY, BOWENS** not only played an active role in the prosecution, he was the

**77**. In the prosecution of **RILEY**, **BOWENS** not only played an active role in the prosecution, he was the key witness and the main officer who provided incriminating false statements to the Brooklyn District Attorney's Office (KCDAO). See **EXHIBIT P**, **RILEY** Felony Complaint.

**78**. In the **RILEY** prosecution, as well of all those in the proposed class, the Brooklyn District Attorney's Office (KCDAO) materially relied on the sworn testimony and evidence provided by

**BOWENS.** There was no independent evidence – separate and apart from evidence that depended on **this officer's** creditability – to corroborate his **account**.

**79**. In **RILEY'S** criminal case, as well as the proposed class, **BOWENS**, acting in his capacity as an undercover officer would allege that he observed a narcotics transaction, or that he acted as an undercover officer, and exchanged pre-recorded buy money for drugs (or an observation sale).

**80**. In **RILEY'S** criminal overturned conviction, BOWENS operated as the undercover and was the sole witness claiming he observed **RILEY** possess crack-cocaine on February 24, 2015. See **EXHIBIT L,** *RILEY Superior Court Information, Which Led to RILEY'S Conviction and Ultimately Overturned on November 4, 2022. Plaintiff, and all those similarly situated ultimately were deprived of their liberty by either being incarcerated, placed on probation, parole or supervision.*

**81.** During the course of **RILEY'S** prosecution BOWENS was regularly in touch with prosecutors regarding the facts and details of **RILEY'S** criminal case.

**82.** **BOWENS** pointed out RILEY in a confirmatory show-up and this information was recorded by the KCDAO and memorialized in a Notice pursuant to CPL 710.30(1)(b) which was prepared by the KCDAO. The statements and participation **BOWENS** provided in **RILEY'S** prosecution was critical and at the same time false.

*83.* Neither plaintiff nor those similarly situated gave defendant **CITY**, its agents, servants or employees, including **BOWENS** probable cause to believe that plaintiff, and all those similarly situated, had committed the falsely charged illegal acts. Although **RILEY** was indicted as a result of the statements **BOWENS** provided about the case, the indictment was procured by fraud. **BOWENS** misrepresented evidence used in the Grand Jury to indict **RILEY**. *Probable cause was vitiated*. **BOWENS** was investigated by the Internal Affairs Bureau, see **EXHIBIT Q**: *IAB INVESTIGATION.*

84. Furthermore, **RILEY**, upon information and belief, denies participating in any sale of narcotics.

85. **RILEY** submits that he was hanging out at that time of his arrest.

86. **RILEY** submits his only crime was hanging out in a public street; nothing more. Mere presence at the scene of a crime, even with knowledge of that crime does not establish probable cause, much less guilt.

87. At the time of his arrest on September 28,2001, **RILEY** was informed that if he went to trial, the information concerning **BOWENS** false account could be used against him should he testify.

88. **RILEY** plead guilty to avoid a much longer sentence knowing that **BOWENS**, the undercover, would testify against him. **RILEY** was aware that **BOWENS** in fact had falsely reported that **he** was observed to have sold drugs possess a firearm, which was material and likely to influence a jury's verdict. **BOWENS** had also in fact forwarded this information to Brooklyn prosecutors. For the same reasoning detailed here that probable was vitiated due to fraud by **BOWENS**, **RILEY'S** so-called admission at allocation is also nullified.

89. The defendants acted with malice because **BOWENS** did not arrest neither the Plaintiff nor those similarly situated with the desire to see the ends of justice served but rather with a false motive or planting and fabricating evidence and thus furthering his career and arrest quota. In a separate lawsuit brought by Jason Oliver, **BOWENS** planted a firearm on **OLIVER** because it was not the right firearm he was looking for, presumably to murder his girlfriend (and not use his service firearm).

90. As a result of the false evidence provided by defendants, plaintiff and all those similarly situated were forced under threat of issuance of a warrant to defend against false charges.

91. Plaintiff, and all those similarly situated ultimately were deprived of their liberty by either being incarcerated, placed on probation, parole or supervision. **RILEY** was sentenced to ONE YEAR incarceration, see **EXHIBIT R**: **RILEY** Sentence and Commit.

**92.** The conduct of the defendants was the direct and proximate cause of plaintiff's loss of liberty starting from one day to four years, which violated plaintiff's' statutory rights guaranteed by the laws and Constitution of New York and the United States.

**93**. November 4, 2022, plaintiff's conviction was vacated pursuant to a Writ.

**94.** The court granted the exonerations because there was a Due Process of Law violation and had this information been known at the time **RILEY** was being prosecuted. **RILEY** would never have been found guilty, and the outcome of the case would have been absolutely different. Without a finding of a constitutional violation the Writ could not have been granted. Interest An interest in restoring faith in the criminal justice system is not a reason to grant a Writ of Error Coram Nobis.

## COUNT TWO

## AGAINST DEFENDANTS FOR VIOLATIONS OF 42 U.S.C §. 1983

## FOR FABRICATED EVIDENCE OF BEHALF OF THE PROPOSED CLASS

## AND RILEY

**95.** Plaintiff on behalf of the proposed class, repeats and reiterates the allegations contained in paragraphs "1" through "94" as if fully set forth herein.

That the aforesaid imprisonment was malicious, unlawful, and not based upon a warrant, probable cause, and or any justification but based on fabricated evidence. The defendant **CITY**, through its agents, servants and/or employees, including **BOWENS** acted in bad faith and without probable cause in committing the aforesaid arrest and imprisonment of **RILEY** and the Proposed Class. **BOWENS** fabricated information, to wit he lied about his observation of **RILEY'S** participation in the sale of crack-cocaine. **BOWENS** also lied regarding their participation in the arrest and prosecution of those people listed in **EXHIBIT L.**

**96.** That aforesaid arrest and imprisonment was made with fabricated evidence as sworn to in the

felony criminal complaints.

97. In addition, **BOWENS** pointed out **RILEY** and confirmed his identity and **BOWENS** did the same practice to the proposed class, acting as an undercover. The information **BOWENS** gave to prosecutors formed the basis for **RILEY'S** prosecution and the Proposed Class and they (**RILEY** and the proposed class) became aware that this fabricated evidence if believed would likely influence a jury's verdict and convict them.

98. **BOWENS** actually met with prosecutors and directly forwarded to the KCDAO incriminating, fabricated evidence that led to **RILEY** and the proposed class prosecution by superior court information and/or indictments.

99. **BOWEN 'S** fabrication of evidence took on many faces. **HE** filed false information in arrest report's, he repeated false statements to fellow officers who were informed of critical facts which turned out to be false; they repeated false reports when they spoke to prosecutors in person and he committed perjury when they testified in grand juries concerning prosecutions they initiated. See **EXHIBIT S**; *The New York Times. "Detectives' Lies Sent Three People to Prison. Prosecutors Charge"*.

100.    The aforesaid fabrication of evidence caused **RILEY** and the Proposed Class to suffer a deprivation of their liberty ranging from one day to four years' incarceration, to probation, in patient drug programs, and post release supervision (Parole). **RILEY** was sentenced to 1 year incarceration.

101.    By reason of the forgoing, the defendants became liable to **RILEY** and the Proposed Class in a sum of money which exceeds the jurisdiction limits of all courts.

## COUNT THREE

## AGAINST DEFENDANTS FOR VIOLATIONS OF 42 § 1983 AND THE FOURTEENTH AMENDMENT AND VIOLATIONS FOR DENIAL OF DUE PROCESS OF LAW IN

## VIOLATION OF THE NEW YORK AND UNITED STATES CONSTITUTION ON BEHALF OF THE PROPOSED CLASS AND RILEY

**102.**    Plaintiff on behalf of those similarly situated repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force.

**103.**    It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by police officers. When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutor's, he violates the accused's constitutional right to a fair trial.

**104.**    The plaintiff and all those similarly situated were denied their right to a fair trial i.e., they were subjected to a deprivation of liberty without due process of law in violation of New York and United States Constitution pursuant to the due process clause of the Fourteenth Amendment by the participation of BOWENS in ALL of the prosecutions mentioned herein.

*105.*    **BOWENS** created false information and provided that information to the District Attorneys which was then used in **RILEY'S** and the proposed Class prosecutions.

**106.**    **BOWENS** consciously lied in generating **RILEY'S** felony complaint as well as the rest of the Proposed Class.

**107.**    A hearing was held in Brooklyn Supreme Court, to review certain convictions to see if **the aforementioned ex-police officer** played a key role in bringing about those prosecutions.

**108.**    Because **THIS OFFICER** was already thoroughly, investigated by The Brooklyn District Attorney's Office, as well as an internal investigation by the same police department **THIS OFFICER** worked for, and it was found, by unequivocal, substantiated evidence that **THIS OFFICER** lied and provided materially false evidence in numerous documented cases, **BOWENS** credibility was called into question in cases he acted as a key witness from 2005-2015.

109.    No independent evidence was found to have convicted these people, other than the word of **BOWENS.** The prosecutors conducted mass exonerations in all the cases **BOWENS** played a key role as an undercover policeman.

110.    The hearing involved here was a hearing to determine if the conviction was obtained in violation of a DUE PROCESS RIGHT of the defendants under the Constitution of this State or of the United States, see **EXHIBIT T:** sample transcript of a writ of error coram nobis hearing.

111.    Each defendant, including **RILEY** and those listed in **EXHIBIT L**, had a defense attorney assigned to him or her and the BDAO was represented by their own assistant(s), who in turn represented **the police witnesses**, the officers whose conduct was under review. Evidence was represented by both sides. Argument of Counsel was heard and Brooklyn Supreme Court Judge D'EMIC after due deliberation granted all of the WRITS.

112.    Defendants' action resulted in the plaintiff and the Proposed Class being arrested, handcuffed, incarcerated, forced to appear in court, and endure the fear of being sentenced to jail.

113.    By reason of the aforesaid, the plaintiff, and the Proposed Class have been damaged, and they are entitled to compensatory damages in the sum to be determined by the Court.

<u>**COUNT FOUR**</u>

<u>**MUNICIPAL LIABILITY: CONSTITUTIONAL VIOLATIONS:**</u>

<u>**MONELL CLAIM**</u>

114.    Plaintiff and the proposed Class reallege and incorporate by reference the allegations set fourth in paragraphs "1" through "113" of this class action complaint.

115.    In short order, the aforementioned ex-police officers, the investigating officials, lied about the evidence they directly produced, either by their observations or direct participation and interaction

with RILEY and all those similarly situated, knowing that the evidence they provided would likely influence a jury's verdict.

116.    **RILEY** and the Proposed Class submit that **BOWEN'S** pattern, custom and practice of falsifying evidence was so widespread and permanent that it had the force of an officially adopted policy. This pattern and practice was the cause of **RILEY'S** injuries (as well as the Proposed Class.).

117.    Police corruption is not a new problem that afflicts the N.Y.P.D. The last widespread police scandal involved close to fifty officers of the 30th precinct with hundreds of convictions tossed out due to a custom or practice of "testilying", booming (breaking down doors without search warrants, and flaking people, (planting evidence on innocent people). The 1994 Mollen Commission Report documented all this police corruption. This report is too remote in time, too tangential and too vague to establish the custom and practice **the INDIVIDUAL OFFICERS** practiced.

118.    Fast forward to 2009, and a widespread pattern and practice so persistent and widespread as to practically have the force of law is being carried out by **the INDIVIDUAL OFFICERS.**

119.    Former detective Stephen Anderson testified under a cooperation agreement in the corruption trial of Brooklyn South Narcotics Detective Jason Arbeeny than it was common practice to fabricate drug charges against innocent people to meet arrest quotas. See **EXHIBIT U:** *New York News Article. We Fabricated Drug Charges Against Innocent People to Meet Arrest Quotas.*

*120.*    This practice of meeting quotas impacted the arrest of **RILEY** and those similarly situated.

**BOWENS'** systemic pattern and practice of tainted convictions range from 2011 to 2015 which were obtained after the quota practice came to light. See **EXHIBIT V:** *News Article. Former New York Police Officer Blows Lid Off Drug Planting Scheme.*

121.   Other lawsuits involving **BOWENS**, including reports from the CCRB are similar enough to RILEY'S own case, and those similarly situated, that they demonstrate a policy, practice or custom that pervades the NYPD. See **EXHIBIT W**: Article Detailing 16 Known Lawsuits against BOWENS, all Similar to **RILEY'S** claims in this Complaint.

122.   The municipal liability claim under section 1983 is premised upon the underlying constitutional violation of **RILEY** and the Proposed Class's due process rights under the Fourteenth Amendment and violation of their Fourteenth Amendment rights due to malicious prosecution.

123.   **BOWENS created** false information which he memorialized in NYPD and BDAO case files and he testified falsely before grand juries and to fellow police officers whose job it was to sign felony criminal complaints under penalty of perjury which all impacted the cases against those arrested. **BOWENS** violated the accused' constitutional right to a fair trial.

124.   **BOWEN'S** widespread pattern and practice of police corruption and misconduct was so widespread that his arrest led to the dismissal of at least 134 tainted convictions in Brooklyn. SEE **EXHIBIT A and B. The INDIVIDUAL OFFICER'S** *custom and practice of falsifying Reports covered Hundreds of cases in King.* See **EXHIBIT J**.

125.   Considering the various allegations made by **RILEY** and the Proposed Class (especially those lawsuits already filed by my office against the **CITY** of New York and **these officers**), they have provided enough detail about their own arrests and convictions to identify a factually similar pattern, practice, and custom so persistent and widespread throughout the N.Y.P.D so as to give these patterns of corrupt behavior by **the INDIVIDUAL OFFICERS** the force and flavor of law.

126.   The elements of a Monell Claim are met here because a widespread pattern of corrupt behavior that constituted a custom or usage with the force of law caused **RILEY** and the Proposed Class to be subjected to the deprivation of a fair trial in violation of the New York State and United States

Constitutions. See **EXHIBIT A-W** attached to this complaint as **EXHIBIT**S.

**127.**  All totaled, at least three hundred and seventy-eight (378) convictions have been vacated because of the **INDIVIDUAL OFFICER'S** key role in those convictions. **BOWENS** accounts for one-third of this amount. Prior to 2011 the responsible policy making officials of defendant **CITY** knew or in the exercise of reasonable care should have known, that individual police officers of the **CITY** had engaged in a pattern and practice of illegal and unconstitutional conduct, including fabricating evidence, malicious prosecutions, and the denial of due process of law. Specifically, defendant **CITY** knew or should have known that the INDIVIDUAL OFFICERS had maliciously prosecuted and denied due process of law to numerous people, resulting in tainted prosecutions. Despite knowledge of the aforesaid, pattern and practice defendant **CITY** failed to properly investigate this conduct and failed to supervise, train and discipline the officers of the New York **CITY** Police Department, Defendant **CITY** adopted a "hands off" policy of custom with regard to such illegal and unconstitutional acts committed by police officers, which encouraged the individual defendants in this case to believe that they could violated the constitutional rights of the plaintiff and the Proposed Class with impunity and with the explicit or tacit approval of the defendant **CITY**, in violation of 42 U.S.C § 1983.

**128.**  As a result of the foregoing, plaintiff and Proposed Class sustained the damages and injuries previously descried and seek compensatory damaged from the **CITY** of New York.

## THE COURT SHOULD APPOINT THE UNDERSIGNED AS CLASS

## COUNSEL

**129.**  Rule 23(g)(1) provides that "unless a statue provides otherwise, a court that certifies a class must appoint class counsel. "Rule 23(g)(1)(A) outlines the factors relevant to the appointment of class counsel:

(i)    The work counsel has done in identifying or investigating potential claims in this action;

(ii)    counsel's experience in handling class actions (see FELICIANO V CITY, 24-cv-7212

ALC, (S.D.N.Y.), and other complex litigation (Despradel Et Al., v American Airlines,et.,al.,

02-cv-4725, S.D.N.Y, SETTLED FOR 4.5 MILLION DOLLARS) and the types of claims

asserted in the action;

(iii)    counsel's knowledge of the applicable law and

the resources that counsel will commit to representing the class[.]

### **DAMAGES**

**130**. As a direct and proximate result of the said acts of the defendant**, LEVAR**

**RILEY**, and all those similarly situated, suffered the following injuries and damages:

   a.   Violations of their due process rights under the Fourth and Fourteenth Amendments
        to the Constitutions;

   b.   Loss of physical liberty due to incarceration and other forms of restriction on liberty;

   c.   Further restriction on their liberty due to forced court appearances;

   d.   Humiliation, embarrassment, injury, to reputation, physical abuse;

   e.   Sever disruption of family

**131**. The **CITY**, violated the civil rights of close to 134 people, whose convictions were

vacated and dismissed because of BOWENS' key, material and pivotal participated (and no

other evidence other than BOWENS).

**132**.  Many more people were denied Due Process of Law BY OTHER CORRUPT EX-POLICE

OFFICERS, many of whom worked with BOWENS **IN** violating their civil rights.

**133.** The Class Members deserve a meaningful opportunity to recover damages from these

constitutional violations. Certifying the proposed Class will be the most effective route to redress this wrong.

135. **RILEY**, on behalf of all those similarly situated, requests the Court:

I. Certify this case as a class action with the following class definitions: All persons who were prosecuted because of **BOWEN'S** key participation and as a result had their criminal conviction vacated and dismissed;

II. Appoint Plaintiff **LEVAR RILEY,** as Class representative;

III. Appoint as Class Counsel the Law Office of Rudy Velez and Associates;

IV. Award compensatory damages in an amount to be determined by the court;

V. Award attorney's fees (contingency fee) as fair and reasonable compensation for services rendered in connection with this action;

VI. Grant further relief that may be just and proper.

Dated: Bronx, New York
        November 26 2025

Respectfully Submitted,

/s/_____
Rudy Velez, Esq.
Law Office of Rudy Velez & Associates
930 Grand Concourse, Suite 1A
Bronx, New York 10451
(917) 674-0573
rvesq@yahoo.com