# *Exhibit F*

7/18/... we fabricated drug charges against innocent people to meet arrest quotas, former detective testifies – New York Daily Ne...

NEWS > NEW YORK NEWS

# We fabricated drug charges against innocent people to meet arrest quotas, former detective testifies



Willie Anderson/News

Former Detective Stephen Anderson, seen here in 2009, is testifying under a cooperation agreement with prosecutors.

7/18/24, Case 1:23-cv-... narcotics detective testified... Document 185-2    Filed 07/29/24    Page 3 of 3... PageID #: 393



By NEW YORK DAILY NEWS | NYDN@medianewsgroup.com

UPDATED: January 10, 2019 at 9:16 p.m.

## Loading your audio article

A former NYPD narcotics detective snared in a corruption scandal testified it was common practice to fabricate drug charges against innocent people to meet arrest quotas.

The bombshell testimony from Stephen Anderson is the first public account of the twisted culture behind the false arrests in the Brooklyn South and Queens narc squads, which led to the arrests of eight cops and a massive shakeup.

Anderson, testifying under a cooperation agreement with prosecutors, was busted for planting cocaine, a practice known as "flaking," on four men in a Queens bar in 2008 to help out fellow cop Henry Tavarez, whose buy-and-bust activity had been low.

"Tavarez was ... was worried about getting sent back [to patrol] and, you know, the supervisors getting on his case," he recounted at the corruption trial of Brooklyn South narcotics Detective Jason Arbeeny.

"I had decided to give him [Tavarez] the drugs to help him out so that he could say he had a buy," Anderson testified last week in Brooklyn Supreme Court.

He made clear he wasn't about to pass off the two legit arrests he had made in the bar to Tavarez.

"As a detective, you still have a number to reach while you are in the narcotics division," he said.

NYPD officials did not respond to a request for comment.

Anderson worked in the Queens and Brooklyn South narcotics squads and was called to the stand at Arbeeny's bench trial to show the illegal conduct wasn't limited

7/18/... Case 1:23-cv-... Anderson and drug arrests against innocent people to meet arrest quotas, former detective testi... #: 394

"Did you observe with some frequency this ... practice which is taking someone who was seemingly not guilty of a crime and laying the drugs on them?" Justice Gustin Reichbach asked Anderson.

"Yes, multiple times," he replied.

The judge pressed Anderson on whether he ever gave a thought to the damage he was inflicting on the innocent.

"It was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators," he said.

"It's almost like you have no emotion with it, that they attach the bodies to it, they're going to be out of jail tomorrow anyway; nothing is going to happen to them anyway."

The city paid $300,000 to settle a false arrest suit by Jose Colon and his brother Maximo, who were falsely arrested by Anderson and Tavarez. A surveillance tape inside the bar showed they had been framed.

A federal judge presiding over the suit said the NYPD's plagued by "widespread falsification" by arresting officers.

jmarzulli@nydailynews.com

*Originally Published: October 13, 2011 at 4:00 a.m.*

## Around the Web

**REVCONTENT**

2011 ❯ October ❯ 13

Case 1:25-cv-06616-NCM-VMS     Document 1-2     Filed 11/29/25     Page 5 of 34 PageID #:
70
Case 1:23-cv-08968-AMD-TAM     Document 82-4     Filed 09/02/25     Page 2 of 4 PageID #:
721

**The New York Times**     https://www.nytimes.com/2011/10/14/nyregion/those-drugs-they-came-from-the-police.html

ABOUT NEW YORK

# The Drugs? They Came From the Police

**By Jim Dwyer**

Oct. 13, 2011

The first time he saw the chewing-tobacco can, Steve Anderson, a former undercover police officer, testified, it was in a book bag on the floor of a car that he and other undercover officers were using in a buy-and-bust operation.

According to Mr. Anderson, the stuff inside that can — "various narcotics," he said — was used by undercover officers to frame people for phantom drug sales.

In two days on the witness stand at a trial of another officer now under way in State Supreme Court in Brooklyn, Mr. Anderson, who worked in elite units in Brooklyn and Queens, described how rules were trimmed, broken or ignored so that narcotics officers could make their monthly quotas of arrests or buys.

His testimony fundamentally recast a scandal that became public three years ago, when officers in Brooklyn were caught not vouchering all the drugs they seized as evidence. At the time, the authorities said the officers were using the surplus as rewards for information, with one law enforcement official describing it as "noble cause corruption."

Mr. Anderson, however, testified that those spare drugs had other purposes: to plant on people when a narcotics officer needed a productivity boost.

As a result of investigations into the drug units, prosecutors in Brooklyn and Queens have dismissed about 400 criminal cases that they believe were tainted by the involvement of officers connected to the scandal.

Case 1:25-cv-06616-NCM-VMS    Document 1-2    Filed 11/29/25    Page 6 of 34 PageID #:
71
Case 1:23-cv-08968-AMD-TAM    Document 82-4    Filed 09/02/25    Page 3 of 4 PageID #:
722

To settle civil actions, the city is paying about $1,000 per hour of wrongful incarceration, said Richard Cardinale, a lawyer in Brooklyn who said he had filed claims for 25 people and received settlements for all of them. In many cases, the arrested people were able to walk away from what seemed to be damning evidence of wrongdoing that could no longer be trusted.

Mr. Anderson added a new dimension to the saga by spelling out how innocent people were caught in webs of lies told by some officers.

At a Queens nightclub in 2008, Mr. Anderson said, he bought three bags of cocaine from a waiter and a disc jockey. He then gave two of them to another officer who was having trouble meeting his quota and was in jeopardy of losing his undercover assignment. That officer took the drugs, went back and arrested four people who had nothing to do with the sale.

After videotape in the club showed that the officers were lying, Mr. Anderson pleaded guilty to official misconduct and now faces two to four years in prison. (The other officer, Henry Tavarez, also pleaded guilty to a minor charge.)

Mr. Anderson testified this month in the trial of Jason Arbeeny, who worked in Brooklyn and is accused of planting drugs on two people who had never been arrested. Although he testified that he did not know Mr. Arbeeny or have any knowledge of wrongdoing by him, Mr. Anderson's description of the narcotics units was offered by prosecutors as evidence of what they say is a conspiracy to cover up its lawlessness by routinely falsifying records and keeping stashes of narcotics.

Justice Gustin Reichbach, who is hearing the case without a jury, said he understood why Mr. Anderson would swap an arrest to help a fellow officer who was falling short of his targets, but pressed him on what he had done to innocent people.

"What was your thought in terms of saving his career at the cost of these four people who had seemingly no involvement in the transaction?" Justice Reichbach asked.

Case 1:25-cv-06616-NCM-VMS    Document 1-2    Filed 11/29/25    Page 7 of 34 PageID #:
72
Case 1:23-cv-08968-AMD-TAM    Document 82-4    Filed 09/02/25    Page 4 of 4 PageID #:
723

IT was called "attaching bodies" to the drugs, Mr. Anderson answered, and he said nearly four years into his life undercover, he had become numb to the corruption.

"It was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators," Mr. Anderson said. "Seeing it so much, it's almost like you have no emotion with it. The mentality was that they attach the bodies to it, they're going to be out of jail tomorrow anyway, nothing is going to happen to them anyway.

"That kind of came on to me and I accepted it — being around that so long, and being an undercover."

His testimony was reported Thursday in The Daily News and The New York Post.

At a trial earlier this year, Sean Johnstone, the former officer who Mr. Anderson said had kept the tobacco can in the car, was acquitted by a judge on 34 of 35 various counts of misconduct. Asked about Mr. Anderson's accusations, the lawyer for Mr. Johnstone, Anthony Ricco said, "Sean's answer is, 'I never did a single thing that he said he saw me do.' "

*A correction was made on Oct. 21, 2011: The About New York column on Oct. 14 about a New York Police Department scandal in which narcotics officers broke rules to make their monthly quotas of arrests or buys misspelled the surname of an officer on trial on charges of planting drugs. He is Jason Arbeeny, not Arbeedy.*

---

When we learn of a mistake, we acknowledge it with a correction. If you spot an error, please let us know at nytnews@nytimes.com. Learn more

E-mail: dwyer@nytimes.com

Twitter: @jimdwyernyt

A version of this article appears in print on , Section A, Page 23 of the New York edition with the headline: The Drugs? They Came From the Police

# *Exhibit G*

7/18/24, 9:22 AM    Case 1:23-cv-08968-AMD-TAM    Brooklyn Detective Convicted of Planting Drugs on Innocent People - The New York Times    Filed 09/02/23    Page 2 of 4 PageID #: 725

**The New York Times**

https://www.nytimes.com/2011/11/02/nyregion/brooklyn-detective-convicted-of-planting-drugs-on-innocent-people.html

# Detective Is Found Guilty of Planting Drugs

**By Tim Stelloh**

Nov. 1, 2011

The New York Police Department, already saddled with corruption scandals, saw its image further tainted on Tuesday with the conviction of a detective for planting drugs on a woman and her boyfriend.

The bench verdict from Justice Gustin L. Reichbach in State Supreme Court in Brooklyn stemmed from acts committed in 2007 by the defendant, Jason Arbeeny, a 14-year veteran of the department who worked in the Brooklyn South unit.

Before announcing the verdict, Justice Reichbach scolded the department for what he described as a widespread culture of corruption endemic in its drug units.

"I thought I was not naïve," he said. "But even this court was shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

The case against Detective Arbeeny was rooted in a far larger tale of corruption in Police Department drug units: several narcotics officers in Brooklyn have been caught mishandling drugs they seized as evidence, and hundreds of potentially tainted drug cases have been dismissed. The city has made payments to settle civil suits over wrongful incarcerations.

During the trial, prosecutors described the corruption in the drug units that Detective Arbeeny worked for. One former detective, Stephen Anderson, who did not know the defendant, testified that officers in those units often planted drugs on innocent people. Mr. Anderson has pleaded guilty to official misconduct over a 2008 episode involving drug evidence and now faces two to four years in prison.

Detective Arbeeny was convicted of official misconduct, offering a false instrument for filing and falsifying business records. Charles Guria, a prosecutor, described this latest case of police corruption as an abuse of power.

"It's a sad day when a police officer misuses his authority," Mr. Guria said.

On Jan. 25, 2007, prosecutors said, Detective Arbeeny planted a small bag of crack cocaine on two innocent people.

The detective's lawyer, Michael Elbaz, tried to discredit the most important prosecution witnesses, Yvelisse DeLeon and her boyfriend, Juan Figueroa. Ms. DeLeon had testified that the couple drove up to their apartment building in Coney Island and were approached by two plainclothes police officers. She said she then saw Detective Arbeeny remove a bag of powder from his pocket and place it in the vehicle.

"He brought out his pocket," Ms. DeLeon told the court. "He said, 'Look what I find.' It looked like little powder in a little bag."

Later in 2007, the detective was accused of stealing multiple bags of cocaine from the prisoner van to which he had been assigned; Justice Reichbach found Detective Arbeeny not guilty of those charges.

Though there had been conflicting testimony during the trial about the existence of quotas in the department's drug units, Justice Reichbach said, a system of flawed procedures in part led to the charges against Detective Arbeeny.

In the department's Brooklyn South narcotics unit, for instance, drugs seized as evidence are not counted or sealed until they reach the precinct and can be handled by multiple officers along the way, Justice Reichbach said, adding that such unacceptable practices "pale in significance" to the "cowboy culture" of the drug units.

"Anything goes in the never-ending war on drugs," he said, "and a refusal to go along with questionable practices raise the specter of blacklisting and isolation."

7/18/24, 9:27 AM    Case 1:23-cv-08968-AMD-TAM    Document 1-8    Brooklyn Detective Convicted of Planting Drugs on Innocent People - Filed 09/02/25 - The New York Times PageID #: 727

Sentencing is scheduled for January. Detective Arbeeny faces up to four years in prison.

A version of this article appears in print on , Section A, Page 26 of the New York edition with the headline: Detective Is Found Guilty of Planting Drugs



# N.Y. Cop Found Guilty of Planting Drugs

A New York City Police detective planted drugs on a woman and her boyfriend outside a Coney Island apartment building in 2007, a judge has ruled.

Nov. 3, 2011

A New York City Police detective planted drugs on a woman and her boyfriend outside a Coney Island apartment building in 2007, a judge has ruled.

State Supreme Court Justice Gustin L. Reichbach found detective Jason Arbeeny guilty of official misconduct, offering a false instrument for filing and falsifying business records in connection with the incident, The New York Times reported Wednesday.

Before announcing the verdict, Justice Reichbach scolded the police department for what he called a widespread culture of corruption endemic in its drug units.

Several narcotics officers in Brooklyn have been caught mishandling drugs seized as evidence, resulting in the dismissal of hundreds of potentially tainted drug cases.

During Arbeeny's trial, prosecutors described corruption in the drug units that the 14-year veteran officer worked for.

One former detective testified that officers in those units often planted drugs on innocent people.

"It's a sad day when a police officer misuses his authority," said prosecutor Charles Guria.

Copyright 2011 U.P.I.All Rights Reserved

undefined

**Source URL:** https://www.officer.com/home/news/10446624/ny-cop-found-guilty-of-planting-drugs

# *Exhibit H*

1    SUPREME COURT OF THE STATE OF NEW YORK

2    COUNTY OF KINGS : CRIMINAL TERM : PART 50
     ------------------------------------------------X
3    THE PEOPLE OF THE STATE OF NEW YORK

4                    - against -
                                 Ind.No. 1931-2008
5

6    JERRY BOWENS,

7                             Defendant
     ------------------------------------------------X

8
                             320 Jay Street
9                            Brooklyn, New York  11201

10                           August 19, 2009

11   B E F O R E :

12                 HONORABLE JOHN P. WALSH

13                           Justice

14
     A P P E A R A N C E S :
15
                   OFFICE OF CHARLES J. HYNES
16                 DISTRICT ATTORNEY, KINGS COUNTY
                   BY:  CHARLES GURIA, ESQ.
17                       HILDA MORTENSEN, ESQ.
                         Assistant District Attorneys
18

19                 WAYNE BODDEN, ESQ.
                   For the Defendant
20                 45 Main Street
                   Brooklyn, New York 11201
21

22   Also present:  Jesse Ward - Daily News

23   Transcribed by:  Enika Bodnar, CSR, RPR

24                       PHYLLIS PRICE
                     Official Court Reporter
25

1931-2008 Sentence

1     THE COURT CLERK:  This is Calendar Number 26,

2     under Indictment 1931 of 2008, Jerome Bowens, incarcerated

3     and produced before the Court.

4         MR. GURIA:  Good morning, your Honor.  Charles

5     Guria, G-U-R-I-A, Office of Charles J. Hynes.

6         MS. MORTENSEN:  Also on behalf of the District

7     Attorney, Hilda Mortensen.

8         MR. BODDEN:  Wayne Bodden, 45 Main Street for

9     Mr. Bowens.

10        THE COURT:  Is Mr. Ward available?  We will

11    wait until Mr. Ward comes in.

12        MR. WARD:  Jesse Ward for the Daily News.

13        THE COURT:  We have an application by Mr. Ward

14    to the Court to use still photographs for this proceeding.

15    And I generally ask defense counsel if there is any

16    objection.  If he does do the still photographs, it is

17    done in the jury box and not intrusive.

18        It is up to you.  Do you want to talk to your

19    client about it?

20        MR. BODDEN:  I have spoken to Mr. Bowens about

21    it.  Unfortunately for him, he had such an experience, he

22    objects, likely to object at this point.

23        THE COURT:  I am sorry, Mr. Ward.  I am denying

24    the application.

25        MR. WARD:  Judge, Mr. Bowens himself has had

1931-2008 Sentence

1    media attention before and received it, so it is a little

2    unusual that he suddenly declines.

3         THE COURT:  It is discretionary and I am going

4    to deny it.

5         MR. WARD:  Yes, your Honor.

6         MR. GURIA:  We are on for sentencing, your

7    Honor.

8         This defendant has previously pled guilty to

9    Criminal Sale of a Controlled Substance and also

10   Falsifying Business Records in the First Degree.

11        This defendant entered into a cooperation

12   agreement with the District Attorney's office.  He then

13   violated that cooperation agreement and, in fact, he

14   committed another crime and now stands charged with

15   homicide.

16        At the time when this defendant was arrested,

17   the underlying facts of this case was that he was a New

18   York City police officer and the circumstances of the sale

19   was that he took drugs off the suspect and he turned

20   around and gave a portion of those drugs to another

21   individual.

22        What Mr. Bowens didn't know was at the time that

23   took place, the person who he took those drugs from was an

24   undercover police officer working for the Internal Affairs

25   Bureau.  The falsification of business records was that he

1931-2008 Sentence

 1   lied in his police paperwork where he underreported the

 2   amount of drugs he got off the individual to cover the

 3   fact that he stole.

 4        So at this point in time when he did this, he

 5   was a New York City police officer, he disgraced his badge

 6   and shield.

 7        The promise was, if he violated his cooperation

 8   agreement, he would receive a year on the sale and he

 9   would get one to three on the falsifying business records.

10        It is the position of the District Attorney that

11   he violated all of the terms of the cooperation agreement.

12        In looking at the probation report, they

13   indicate they strongly recommend incarceration for this

14   defendant and the People agree.  And we ask the sentence

15   of one to three be carried out.

16        THE COURT:  The promise was?

17        MR. GURIA:  One-and-a-half -- it was a year on

18   the sale and one to three on the falsifying business

19   records.

20        THE COURT:  Which is the E felony?

21        MR. GURIA:  Yes.  And followed by one-and-a-half

22   years of post-release supervision.

23        THE COURT:  Anything you want to add, Mr.

24   Bodden?

25        MR. BODDEN:  Not very much, your Honor.  I have

Case 1:25-cv-06616-NCM-VMS    Document 1-2    Filed 11/29/25    Page 19 of 34 PageID
#: 84
Case 1:23-cv-08968-AMD-TAM    Document 101-1    Filed 11/10/25    Page 5 of 5 PageID
#: 948

1931-2008 Sentence

1  discussed with Mr. Bowens the nature of the plea agreement

2  and all his options available to him.  He has chosen to

3  stand ready for sentence with nothing further to say, and

4  rely on the Court's discretion for sentence.

5          THE COURT:  My understanding was the agreement,

6  it was a concurrent sentence.

7          MR. BODDEN:  Yes, your Honor.

8          THE COURT:  Mr. Bowens, do you have anything you

9  want to say?

10          THE DEFENDANT:  No.

11          THE COURT:  On the Sale Three count, he is

12  sentenced to one year.  As part of the sentence, it is

13  one-and-a-half years post-release supervision.

14          On the Falsifying Business Records count, he is

15  sentenced to a minimum of one, maximum of three years and

16  the surcharge is imposed.

17          MR. BODDEN:  Concurrently, your Honor?

18          THE COURT:  Yes, concurrent.

19          Thank you.

20                    *  *  *  *  *

21          I, Enika Bodnar, do hereby certify that the
foregoing is a true and correct transcription, to the best
22  of my ability, of the above proceedings as
stenographically recorded by Phyllis Price, an official
23  court reporter.

24          _Enika Bodnar_
                    _____
25                    ENIKA BODNAR

NEWS > CRIME AND PUBLIC SAFETY

# Corrupt ex-NYPD Officer Jerry Bowens gets 40 years for killing gal pal



Ward for News

Ex-cop Jerry Bowens in court on Tuesday.

**FLASH SALE!**



SAVE NOW

 By **NEW YORK DAILY NEWS** | NYDN@medianewsgroup.com
UPDATED: January 13, 2019 at 6:35 AM EST

A corrupt ex-cop who admitted gunning down his girlfriend and wounding her pal got 40 years to life in prison on Tuesday – the sentence his victim's heartbroken relatives had demanded.

Brooklyn Supreme Court Justice Alan Marrus handed down the maximum sentence allowed under a plea deal Jerry Bowens, 45, made for murdering Catherine D'Onofrio, 28, and shooting Melissa Simmons nearly two years ago.

"In 28 years of being a judge, this is one of the easiest decisions I've had to make," Marrus said before the sentencing.

Brooklyn prosecutor Michelle Kaminsky said the disgraced narcotics officer killed his estranged girlfriend by tricking her into coming to her friend's home, locking the two women in the bathroom and shooting them.

**FLASH SALE!**                    SAVE NOW

# *Exhibit I*

# *Exhibit J*

 

CONVICTION OVERTURNED

# Brooklyn DA overturns 378 convictions due to 13 NYPD officers' misconduct, false testimony


Thursday, September 8, 2022

          

Kemberly Richardson reports from the Upper West Side.

NEW YORK CITY (WABC) -- The Brooklyn District Attorney's office has asked a judge to throw out hundreds of convictions that relied on testimony from dirty police officers.

District Attorney Eric Gonzalez presented 378 cases to a Brooklyn Supreme Court judge asking for their dismissal based on new evidence that the police officers who testified were not reliable witnesses.

"These former police officers were found to have committed serious misconduct that directly relates to their official job duties, calling into question the integrity of every arrest they have made," Gonzalez said. "A thorough review by my Conviction Review Unit identified those cases in which their testimony was essential to proving guilt, and I will now move to dismiss those convictions as I no longer have confidence in the integrity of the evidence that underpinned them."

The 13 officers who provided testimonies as essential witnesses were found guilty of crimes including murder, planting drugs, taking sex bribes, and lying under oath.

"Credibility and honesty are at the heart of the justice system, and we cannot improve community trust without adhering to the highest ethical standards," Gonzalez said.

**RELATED** |Bronx DA dismissing 133 convictions after former NYPD detective charged with perjury



The Bronx district attorney says there will be a total of more than 500 cases dismissed because they rely on testimony from former Detective Joseph Franco.

The Legal Aid Society applauded the Brooklyn DA's office for the dismissals and called for other New York City District Attorneys to conduct similar reviews.

"We urge DA Gonzalez and all of the other New York City District Attorneys to conduct these reviews on an ongoing basis and with full transparency, not just in response to public pressure, but as their duty to 'do justice,'" Legal Aid Society Director Elizabeth Felber said. "To do otherwise erodes the public's trust in law enforcement and the criminal legal system."

Among the convictions, the Brooklyn DA will throw out are 47 felonies.

The other 331 convictions are misdemeanor drug possession charges or traffic law violations from arrests between 1999 and 2017.

About 131 of the convictions were made by four officers who were involved in the Brooklyn South Narcotics corruption scandal in the early 2010s.

Another 78 cases were made by two narcotics officers who plead guilty in 2019 to receiving bribes in the form of sex acts.

The cases will be dismissed via a petition that states prosecutors have not identified evidence indicating innocents but that "in the interests of justice, which includes enhancing community trust in the criminal justice system" the DA's office will drop the charges.

The defendants will not receive refunds of any fees or fines they received in connection with the charges.

These dismissals come after the DA's office decided to dismiss 90 convictions that relied on the work of former NYPD Detective Joseph Franco, who lied during several arrests back in 2017 and 2018.

**ALSO READ |New York City correction officer charged in murder of teen allegedly in possession of 'bead blaster'**

# *Exhibit K*



(https://www.dnainfo.com/new-york/columns/on-inside)

MANHATTAN (//WWW.DNAINFO.COM/NEW-YORK/MANHATTAN)

**Courts (//www.dnainfo.com/new-york/topics/courts)**

**Crime & Mayhem (//www.dnainfo.com/new-york/topics/crime-mayhem)**

## Dozens of NYPD Officers Investigated for Perjury

By Murray Weiss (//www.dnainfo.com/about-us/our-team/editorial-team/murray-weiss) | August 17, 2011 6:47am

🐦 @weiss_murray (http://twitter.com/weiss_murray)



At least three dozen cops are under investigation for allegedly committing perjury in various criminal cases including drug busts and even a murder, DNAinfo.com has learned.

As if a ticket-fixing scandal (http://www.dnainfo.com/20110411/manhattan/ticketfixing-scandal-looms-over-nypd) wasn't bad enough, the new citywide investigations cut across a broad spectrum of suspected lying and false statements made on official police reports, in testimony before grand juries and at trials.

These cases are unrelated to the two-year-old ticket-fixing probe of scores of cops who allegedly killed summonses for everything from speeding to drunk-driving for friends, relatives, and fellow cops.

UPMANHATTAN -
Dozens of NYPD Officers Investigated for Perjury

The perjury investigations are being conducted by the NYPD's Internal Affairs Bureau and prosecutors from all five boroughs.

Officers were caught flat out lying about the circumstances of arrests or the way evidence was seized, sources said. In others, cops foolishly cut corners in paperwork or shaded testimony rather than reporting exactly what they saw, or more importantly, what they did not witness.

â€œThe cases run the gamut,â€ one knowledgeable source said.

"There are narcotics officers who swore to something that did not happen, which is blatant perjury, saying someone threw marijuana to the ground, when they did not," the source continued. "It is classic flaking in order to make an arrest stick and get an arrest number.

"Then on the other end of the spectrum, there are cases where things are done that may not be intentional, mistakes in paperwork or memory, but the district attorneys are very concerned and want to make sure it is not something venal," the source added.

In some cases, prosecutors and Internal Affairs probers have retrieved surveillance video from stores and shops near â€œarrest scenesâ€ to verify officer accounts. After tapes were reviewed, some officers were caught telling lies or half-truths in official reports or in court.

Francisco Payano, a Bronx detective, is among the first in a new wave of officers to face charges. He was accused earlier this summer of committing 49 counts of perjury for repeatedly lying to a grand jury and a judge about witnessing crack cocaine sales in a Bronxwood Avenue building lobby, according to court documents.

Surveillance video from the building did not even show Payano's suspect in the lobby at any time during the so-called crime, prosecutors allege in court documents.

"There is no excuse for making anything up," said another law enforcement source with knowledge of the perjury probes.

"But everyone knows there is a lot of pressure on cops to make arrests," the source continued. "And some of the problem is that officers, particularly younger ones, fail to understand that misreporting any facts can look like something that was done on purpose, and puts them in jeopardy of being arrested."

Concerned officials from various police unions have gone so far as to attend roll calls around the city's precincts to drive home the point that accurate and truthful reporting and testimony is as important as the arrests themselves. And putting a career at risk is not worth cutting a corner for.

"We felt compelled that more needs to be done on testifying and on filling out paperwork, so we went out to speak with them about preventing mistakes and accurately quoting fellow officers about what occurred during arrests," a union official said.

For its part, the NYPD last January established a pilot program for cops to participate in mock trial workshops to instruct them on how to successfully, and truthfully, testify. Top brass say they do not want officers fudging anything about a case and to let the chips fall where they may.

Still the problem persists.

And there are always cases where all the lectures, training and warnings will not prevent abuses, especially if they involve affairs of the heart.

Take the case of Sgt. Bobby Habib, who can only be described as a great cop gone wild.

Sgt. Habib was a respected NYPD translator who speaks three languages, but he was recently accused of lying during a murder trial about his relationship with the wife of a Brooklyn murder suspect.

Because of his skill as a linguist, Habib was dispatched one time to France to interview Leila Grison and her husband, Marien Kargu, who was held in France as a suspect in the 2001 strangulation of Angelo Guzzardi.

According to court records, Grison used to live and work in Sunset Park and shared an apartment with Guzzardi and his girlfriend.

At the time of the murder, Kargu allegedly flew over from France for a visit and grew angry over her living arrangement. He then strangled Guzzardi, tossed his body in a Dumpster and then returned to France with his wife.

At Karguâ€™s trial last October, Habib testified he only spoke with Grison on one occasion in France.

But under blistering cross examination, he admitted he visited her more than once. And there was another issue about a series of emails between Habib and Grison that depicted a relationship that went well beyond a solo overseas trip on official NYPD business, according to officials.

Habib's testimony did not destroy the case against Kargu, who was convicted of murder (he's now appealing). But it may have destroyed his career.

Habib has been charged with two felony and two misdemeanor counts of perjury on the witness stand. He is due back in Brooklyn court next month on the charges.

"There are some things even the fear of indictment can't prevent," one source observed.

   

### ✐ Recommended

WEST FARMS ▸ (HTTPS://WWW.DNAINFO.COM/NEW-YORK/BRONX/FORDHAM-TREMONT)
2nd Knife Found in Classroom Where Student Was Fatally Stabbed, NYPD Says
(https://www.dnainfo.com/new-york/20171003/west-farms/school-stabbing-knife-abel-cedeno-matthew-mccree-urban-assembly)


(https://www.dnainfo.com/new-york/20171003/west-

HARLEM ▸ (HTTPS://WWW.DNAINFO.COM/NEW-YORK/MANHATTAN/HARLEM)
Nicole Suriel's Life Ended Amid Panic After Weeks of Poor Planning
(https://www.dnainfo.com/new-york/20100715/central-harlem/final-minutes-leading-nicole-suriels-drowning-fraught-with-missteps-panic)


info.com/new-central-

UPPER WEST SIDE ▸ (HTTPS://WWW.DNAINFO.COM/NEW-YORK/MANHATTAN/UPPER-WEST-SIDE-MORNINGSIDE-HEIGHTS)
28 Romantic Movies Set in NYC â€" and Where to Watch Them This Valentine's Day
(https://www.dnainfo.com/new-york/20170213/upper-west-side/romantic-comedy-movie-set-in-nyc-valentines-day)

(https://www.dnainfo.com/new-york/20170713/upper-suriels-

EAST ELMHURST ▸ (HTTPS://WWW.DNAINFO.COM/NEW-YORK/QUEENS/JACKSON-HEIGHTS-ELMHURST)
Magic Johnson's Infrastructure Firm Invests in LaGuardia Airport Renovation
(https://www.dnainfo.com/new-york/20170808/east-elmhurst/magic-johnson-jlc-loop-capital-laguardia-gateway-airport-investment)


(https://www.dnainfo.com/new-york/20170808/east-elmhurst/magic-johnson-jlc-loop-capital-laguardia-gateway-airport-investment)

# *Exhibit L*

| Subject Officer | Defendant Last Name | Defendant First name | IND#/SCI#/DIN# | Defender |
|---|---|---|---|---|
| Arbeeny, Jason | Candelaria | Reynaldo | 08242-2005 | Legal Aid |
| Arbeeny, Jason | Laguere | Heribert | 11060-2006 | Legal Aid |
| Arbeeny, Jason | Perez | Juan | 09818-2006 | Legal Aid |
| Arbeeny, Jason | Stack | Robert | 09818-2006 | Legal Aid |
| Bowens, Jerry | Barnes | Doneal | 00927-2004 | Legal Aid |
| Bowens, Jerry | Bell | Victor | 08952-2006 | Legal Aid |
| Bowens, Jerry | Cherry | Tyrif | 08071-2003 | Legal Aid |
| Bowens, Jerry | Cole | Ralik | SCI-00187-2007 | Legal Aid |
| Bowens, Jerry | Coracio | Wanda | SCI-10018-2007 | Legal Aid |
| Bowens, Jerry | Gibson | Ramel | SCI-08065-2006 | Legal Aid |
| Bowens, Jerry | Herbert | Otis | 01117-2004 | Legal Aid |
| Bowens, Jerry | Long | Kayron | 03863-2006 | Legal Aid |
| Bowens, Jerry | Miranda | Manuel | SCI-01090-2007 | Legal Aid |
| Bowens, Jerry | Murden | Trevon | 00760-2003 | Legal Aid |
| Bowens, Jerry | Nieves | Tiffany | 02599-2005 | Legal Aid |
| Bowens, Jerry | Oliver | Jason | 07451-2003 | Legal Aid |
| Bowens, Jerry | Pulley | Jerry | 00468-2005 | Legal Aid |
| Bowens, Jerry | Riley | Levar | 07646-2001 | Legal Aid |
| Bowens, Jerry | Satterthwaite | Christa | SCI-02708-2007 | Legal Aid |
| Bowens, Jerry | Shephard | Michael | 02987-2007 | Legal Aid |
| Bowens, Jerry | Smalls | Shannon | 02729-2005 | Legal Aid |
| Bowens, Jerry | Venson | Garcia | 04732-2003 | Legal Aid |
| Bowens, Jerry | Wrenn | Roy | SCI-06283-2006 | Legal Aid |
| Diaz, Sasha | Reaves | Kevin | 04341-2010 | Legal Aid |
| Foder, Michael | Davis | Shawn | 08009-2012 | Legal Aid |
| Foder, Michael | Drennan | Charles | 02690-2013 | Legal Aid |
| Foder, Michael | Dukes | Aubrey | 01272-2014 | Legal Aid |
| Foder, Michael | Jackson | Tyquan | 04852-2012 | Legal Aid |
| Foder, Michael | Johnson | Vernall | SCI-02150-2012 | Legal Aid |
| Foder, Michael | Johnson | Vernall | 04983-2013 | Legal Aid |
| Foder, Michael | Julien | Marvingt | 04323-2012 | BDS |
| Foder, Michael | Tello | Marco | 07716-2013 | Legal Aid |
| Hall, Richard | Barney | Darryl | 08290-2016 | Legal Aid |
| Hall, Richard | Gamble | Kenneth | 01473-2017 | BDS |
| Hall, Richard | Iacuzzi | Vincent | 04549-2017 | Legal Aid |
| Hall, Richard | Vega | Orlando | 06489-2016 | Legal Aid |
| Johnstone, Sean | Ashby | George | 03953-2005 | Legal Aid |
| Johnstone, Sean | Curtis | Ariel | SCI-03417-2005 | Legal Aid |
| Johnstone, Sean | Decrescenzon | Carmine | 05204-2005 | Legal Aid |
| Johnstone, Sean | Diaz | Juan | 00099-2005 | Legal Aid |
| Johnstone, Sean | Dunn | Daniel | 00099-2005 | Legal Aid |
| Johnstone, Sean | Friend | Nathan | 06517-2004 | Legal Aid |
| Johnstone, Sean | Guzman | Nestor | SCI-08349-2006 | BDS |
| Johnstone, Sean | Harris | Gary | 10492-2006 | Legal Aid |
| Johnstone, Sean | Kahn | Debra | SCI-06517-2004 | Legal Aid |
| Johnstone, Sean | Kenny | Lauren | 05902-2005 | Legal Aid |